**William Terry COOK, Plaintiff in Error,**

**v.**

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

Dec. 27, 1973.

Certiorari Denied by Supreme Court March 18, 1974.

James L. Hicks, Nashville, for plaintiff in error.

David M. Pack, Atty. Gen., W. Henry Haile, Asst. Atty. Gen., Michael D. Noel, Asst. Dist. Atty. Gen., Nashville, for defendant in error.

## OPINION

OLIVER, Judge.

Represented below and here by the Davidson County Public Defender, the defendant has duly perfected an appeal in the nature of a writ of error to this Court contesting his conviction of a crime against nature, for which he was sentenced to imprisonment in the State Penitentiary for not less than five nor more than nine years.

Although the defendant does not challenge the sufficiency of the evidence, to facilitate understanding of the case and to place the questions raised in proper perspective, we summarize the material evidence.

About noon on March 15, 1972, four-year-old Jeffrey Hornal, receiving permission from his 16-year-old sister Diane to go across the alley to look for his dog behind Candy's Restaurant and beer tavern, went to this tavern where he bought or the waitress in charge gave him a chocolate brownie and a soft drink. The defendant and his father were in the tavern. Leaving a glass of beer untouched the defendant went outside. The child left two or three minutes later. Looking outside, as she customarily did to see that the child got safely back across the alley, the waitress saw the defendant squatted down and holding Jeffrey on his knee.

A short time later, Diane, who had begun looking for Jeffrey, heard him crying. Running into the back yard, she saw him coming from behind the tavern, crying and screaming and pulling up his pants. He was covered with dirt and leaves, was scratched on his chest and one eye showed signs of injury. When Diane ran and picked Jeffrey up she heard someone say, "Get the hell out of the way" and saw a young white man with reddish blond hair and wearing a long-sleeved purple shirt run around the tavern, and then almost im-mediately saw a man leaving in a car having an antenna on the rear.

The waitress further testified that the defendant, with grease and oil on his face and crumpled leaves all over his purple shirt, came back into the restaurant and told his father he was in trouble and then ran outside and drove off; that about three minutes later he returned and again told his father he was in trouble and that he only had two or three minutes to get out of there; and that he and his father then left.

As to the condition of this little boy Jeffrey, suffice it to say that the uncontradicted evidence of his sister and his mother showed that his anus was lacerated and bleeding. Medical examination by the county medical examiner the same afternoon revealed the presence of male sperm inside the child's rectum. Jeffrey told his mother, who rushed home from work after a call from Diane, that a man hit him in the back three times and took his money.

When arrested the same afternoon the defendant was wearing a purple shirt. An exhibited color photograph of him was made, which he identified, showing him in a long-sleeved purple shirt. His shorts and other items were sent to the FBI, where examination showed blood and semen on and in the front of the shorts.

The defendant denied attacking the boy and denied ever having seen him before, and attempted to establish an alibi. He said that he and his father left the tavern about 10:30 or 10:45, and admitted he was driving a car with an antenna on the rear fender. He explained the blood and semen on his shorts by saying he had been with a woman three or four days before. His sister testified that the defendant arrived at her home between 12:45 and 1:00 p. m. that day, and his brother testified he passed the defendant while driving between 11:00 and 12:30 and talked with him for 35 or 40 minutes.

The defendant's first Assignment of Error complains of the action of the trial court in overruling his motion to quash the indictment, which challenged the constitutionality of T.C.A. § 39–707 upon the ground that the statute is "void for vagueness," and in overruling his motion for a directed verdict upon the same ground.

■■ In the first place the motion to quash the indictment was wholly untenable. The settled law of this State is that a motion to quash an indictment lies only where it is defective or invalid upon its face. Francis v. State, Tenn.Cr.App., 498 S.W.2d 107; Shadden v. State, Tenn.Cr.App., 488 S.W.2d 54. No defect or invalidity appears upon the face of this indictment and the defendant charges none.

■■ Nor is there any merit to the defendant's claim that the court should have held the statute unconstitutional upon his motion for a directed verdict. Both the Supreme Court of this State and this Court have held that this statute, T.C.A. § 39–707 is constitutional. State v. Wade M. Williams, Tennessee Supreme Court per curiam opinion filed at Jackson May 21, 1973; Stephens v. State, Tenn.Cr.App., 489 S.W.2d 542. Crimes against nature, proscribed by T.C.A. § 39–707 include sodomy per anus and per os. Stephens v. State, supra; Fisher v. State, 197 Tenn. 594, 277 S. W.2d 340. Although unpublished opinions are not generally regarded as authority, Fisher v. State, supra; Board of Commissioners of Union City v. Obion County, 188 Tenn. 666, 222 S.W.2d 7; Shepard v. Henderson, 1 Tenn.Cr.App. 694, 449 S.W.2d 726, the reasoning of the Court in such cases may be considered if persuasive, and in this case we concur in the reasoning of Judge Mitchell of this Court whose dissenting opinion was adopted as the Supreme Court's opinion in State v. Wade M. Williams, supra.

■ There is no merit in the defendant's next contention that the court erred in failing to declare a mistrial when the prosecution "paraded the victim, a small child, in front of the jury." The record does not bear out this statement, but shows only that the child was identified by his mother during her testimony. There is nothing to show that he was "paraded" before the jury. His presence in court was not improper. In view of the fact that the defendant's guilt is clear, and he raises no question here concerning the sufficiency of the evidence, and the jury fixed his maximum punishment at imprisonment in the penitentiary for nine years although the statutory maximum is 15 years, there is no basis for his claim that he was prejudiced by the identification of the child.

■■ Also without substance is the defendant's contention that in the charge to the jury the trial court erred in not defining sodomy. Referring to T.C.A. § 39–707, the Court said: "The generality of the prohibition brings all unnatural copulation with mankind or a beast including sodomy within its scope." That statement was lifted directly from the opinion of the Tennessee Supreme Court in Sherrill v. State, 204 Tenn. 427, 321 S.W.2d 811.

As we have noted, sodomy is included in the statutory offense of crimes against nature, and is an act of unnatural copulation. Obviously, therefore, all persons of ordinary intelligence and understanding, including the jurors in this case, know that the act with which this defendant was charged was an act of "unnatural copulation." Where words and terms are in common use and are such as can be understood by persons of ordinary intelligence, it is not necessary, in the absence of anything in the charge to obscure their meaning, for the court to define or explain them. 23A C.J.S. Criminal Law § 1191. In our judgment, common sense dictates that no further clarification of sodomy or "unnatural copulation" was necessary.

■ Beyond that, however, as a general rule it is not error to fail to define or explain terms used in a charge when no re-

quest for an instruction defining or explaining such terms is made. 23A C.J.S. Criminal Law § 1325(2).

Defense counsel submitted no special request. T.C.A. § 40–2517. In 23A C.J.S. Criminal Law § 1325(1) it is said:

"As a general rule, where the court has instructed generally as to the issues, if accused desires a particular instruction, or an instruction upon a particular phase of the case, he should submit it with a proper request that it be given, otherwise a failure to give it is not error, unless a statute or a positive rule of law requires the giving of such instruction; and the failure to request instructions on any particular point, not basic or fundamental, is regarded as a waiver of the right to such instructions and acquiescence in the omission. This is particularly true where the charge given covers the facts of the case and states the law applicable thereto, presents the case fairly, and guards the substantial rights of accused."

■ Finally, altogether groundless is the defendant's contention that the verdict is void because, when the court polled the jury at defense counsel's request, the jurors did not specify the particular crime against nature which they individually reported they found the defendant guilty of. The defendant labors under a misconception in insisting that the jury was required to render a special verdict.

■ A special verdict is one in which the jury reports to the court specific findings upon controlling issues of fact, usually submitted to the jury in the form of factual questions for consideration and determination from the evidence. A special verdict thus returned must on its face embrace a finding of all the facts that may be required to warrant a judgment. Tennessee Procedure in Law Cases (Higgins & Crownover) §§ 1515b and 1515c; Smith v. Parker, 213 Tenn. 147, 373 S.W.2d 205; Harbison v. Briggs Paint Co., 209 Tenn. 534, 354 S.W.2d 464. Whether a jury shall be requested or directed to return a special verdict is discretionary with the trial court. Smith v. Parker supra. See also: Rule 49, Tennessee Rules of Civil Procedure (Volume 1 Tennessee Code Annotated Supplement), which replaced T.C.A. § 20–1316; Jones v. State, 32 Tenn. 399.

Affirmed.

MITCHELL and RUSSELL, JJ., concur.