**Pamela ISBELL (Frazier),
Plaintiff–Appellant,**

v.

**Don L. ISBELL, Defendant–Appellee.**

Supreme Court of Tennessee,
at Nashville.

Sept. 16, 1991.

Randle W. Hill, Jr., Gallatin, for plaintiff-appellant.

William B. Vest, Hendersonville, for defendant-appellee.

OPINION

DAUGHTREY, Justice.

The issue in this appeal is whether and under what circumstances an award of rehabilitative support and maintenance in a fixed amount may later be modified or terminated. Because of sharply conflicting opinions released by different sections of the Court of Appeals, and because of what we find in this case to be an erroneous interpretation of the so-called "live-in boyfriend statute," T.C.A. § 36–5–101(a)(3), we granted review in this case. We now reverse the judgment of the Court of Appeals. In that judgment, the intermediate court affirmed the trial court's termination of support on the ground that the recipient had remarried and thus was no longer entitled to receive rehabilitative alimony.

As with many domestic relations cases, the litigation in this lawsuit has taken on a life of its own. The parties were divorced in 1986, at which time the trial judge awarded child custody to the mother, divided the marital property between the parties, and awarded the wife "rehabilitative alimony" of $300 a month, from May 1986 to September 1986, for the express purpose of permitting her to finish her nursing studies and secure an LPN certificate. On appeal, the Court of Appeals (Western Section) decided that the rehabilitative alimony award was too little and for too short a period of time to permit true rehabilitation, given the fact that the wife had spent many years at home raising children and had little ability to support herself and her children without further training. The court increased the monthly payments to $900 and lengthened the period to four years, beginning with the May 1986 payment. The court's intent was to give the plaintiff an opportunity to secure an RN degree and thus a real possibility of self-sufficiency.

In fact, Pamela Isbell dropped out of school at some point during the next three years, and on May 2, 1989, she remarried. Her ex-husband immediately petitioned the trial court to terminate his alimony payments, on the ground that his ex-wife was no longer in school and, in fact, had gained an alternative source of support through remarriage.

The trial court terminated the alimony payments and the Court of Appeals (Middle Section) affirmed. In doing so, the intermediate court rejected the plaintiff's argument that the original award was for a sum certain over a fixed period and therefore constituted "alimony in solido," which under Tennessee case law is not subject to later modification or termination. The court declined to follow the holding of its sister court, the Court of Appeals for the Eastern Section, which had ruled to the contrary on this same issue, in the unreported case of *Gerlach v. Gerlach,* Court of Appeals, Eastern Section at Knoxville, October 6, 1988, 1988 WL 102744. The intermediate panel in this case said, diplomatically of course, that the *Gerlach* court had failed to give heed to the provisions of T.C.A. § 36–5–101(a)(3).

That statutory provision is a part of T.C.A. § 36–5–101, which governs liability for "support of spouse and children" at the time of marital dissolution or separation. Guidelines for setting spousal support, formerly (and still commonly) referred to as "alimony," are found in T.C.A. § 36–5–101(d). The statute distinguishes two kinds of support. One is temporary and designed to rehabilitate; the other is appropriate for long-term support, when rehabilitation is not feasible. The exact provisions of § 36–5–101(d) are as follows:

It is the intent of the general assembly that a spouse who is economically disadvantaged relative to the other spouse be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in the subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient *except as otherwise provided in subdivision (a)(3).* In determining whether the granting of an order for payment of sup-

port and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve his or her earning capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age, and physical and mental condition of each party;

(5) The extent to which it would be undesirable for a party to seek employment outside the home because he or she will be custodian of a minor child of the marriage;

(6) The separate assets of each party, both real and personal, tangible and intangible;

(7) The provisions made with regard to the marital property as defined in § 36–4–121;

(8) The standard of living of the parties established during the marriage;

(9) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(10) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(11) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

*Id.* (emphasis added).

In turn, subsection (a)(3) creates the following legal presumption:

(3) In all cases where a person is receiving alimony in futuro and the alimo-

ny recipient lives with a third person, a rebuttable presumption is thereby raised that:

(A) The third person is contributing to the support of the alimony recipient and the alimony recipient therefore does not need the amount of support previously awarded, and the court therefore should suspend all or part of the alimony obligation of the former spouse; or

(B) The third person is receiving support from the alimony recipient and the alimony recipient therefore does not need the amount of alimony previously awarded and the court therefore should suspend all or part of the alimony obligation of the former spouse.

This subdivision (a)(3) shall in no way be construed to create any common-law marriage obligation as to third parties.

The Court of Appeals panel in this case interpreted subsection (a)(3) to be "applicable to *all* maintenance and support of a spouse ordered by a court with the possible exception of a lump sum cash award payable immediately and subject to execution upon the finality of the judgment" (emphasis added). A close reading of the statute, however, demonstrates that this interpretation is clearly erroneous, for at least three reasons.

In the first place, subsection (a)(3), by its own terms, applies only to "alimony in futuro." Thus, to the extent that alimony can be granted in some other form, such as the "alimony in solido" discussed below, the provision in subsection (a)(3) is irrelevant. Indeed, if the intermediate court's interpretation were permitted to stand, it would effectively prohibit the awarding of alimony in solido in installments, a practice that was initially approved in *Spalding v. Spalding*, 597 S.W.2d 739 (Tenn.App.1980), and has been followed in a line of cases, both reported and unreported, relying on *Spalding*. *See, e.g., McKee v. McKee*, 655 S.W.2d 164 (Tenn.App.1983). Although the Court of Appeals does not mention *Spalding*, its opinion in this case has the effect, perhaps unintended, of overruling it. According to the Court of Appeals, alimony in

solido could only be awarded in lump sum, payable immediately. This would work a serious hardship in cases where the marital estate has been substantially depleted or dissipated and a sufficiently large sum of cash is not available at the time of divorce, but the obligor nevertheless has the ability to make payments over time.

Secondly, by the terms of § 36–5–101(d), the provisions in subsection (a)(3) are applicable only to long-term, permanent alimony, and not to temporary, rehabilitative support.

Thirdly, and finally, we note that the statutory presumption created by subsection (a)(3), that further spousal support is not needed when the recipient is living with "a third person," is expressly made rebuttable by the terms of (a)(3) and thus will not serve to cut off automatically the right to receive periodic alimony payments. Hence, there is no basis for the Court of Appeals ruling that this statute prevents the award of a fixed amount of alimony by anything other than a lump sum.

■ In summary, we hold that the provisions of T.C.A. § 36–5–101(a)(3) are not relevant to the circumstances presented in this case. Moreover, while we recognize that an unpublished opinion of an intermediate court in no way binds our decision, we conclude that the opinion in *Gerlach v. Gerlach* presents the better-reasoned treatment of the issue now before us, as well as the better result. Finding that we cannot improve upon the analysis set out in *Gerlach*, we expressly adopt its salient points, as set out here:

> An award of alimony may be *in solido* (a definite amount), or *in futuro* (an indefinite amount over an indefinite period of time). "The determining factor in distinguishing whether alimony is *in futuro* or *in solido* is the definiteness or indefiniteness of the amount ordered to be paid." *McKee v. McKee*, 655 S.W.2d 164, 165 (Tenn.Ct.App.1985). In the original divorce decree, the court declared that James Gerlach "shall pay ... the sum of four hundred dollars ($400) each month beginning September 1, 1985, and continuing for forty-two (42) consecutive

months thereafter as rehabilitative alimony in this cause." Although the court did not specify the total amount paid, the full amount of alimony payable—$16,-800—may be definitely determined by simply multiplying the monthly sum ($400) times the designated duration (42 months). This reasoning was applied by the Court in *Spalding v. Spalding*, 597 S.W.2d 739, 740–41 (Tenn.Ct.App.1980). We relied on the rationale of *Karrer v. Karrer*, 190 Neb. 610[,] 612, 211 N.W.2d 116, 188 (1973), and noted with approval this observation of the Nebraska Court:

> It is true that the decree in the present case does not set forth the total award as a sum. But this is not necessary. It is self-evident that the sum, $42,350, is no more certain than $350 multiplied by 121.

*Spalding*, 597 S.W.2d at 741. The mere fact that the lump sum amount is payable in installments is neither conclusive nor determinative regarding its status as *in solido* or *in futuro*. *Phillips v. Webster*, 611 S.W.2d 591 (Tenn.Ct.App.1980).

Additionally, the court's word choice reflected a command by requiring that the defendant *"shall* pay the sum of forty-two *consecutive* months"* (emphasis added). The decree had no language providing for termination upon remarriage. *See Spalding*, 597 S.W.2d at 741; *See also McKee*, 655 S.W.2d at 165.

Finally, in addressing appellant's argument that alimony should terminate because remarriage, by nature, is rehabilitative, we disagree. The concept of rehabilitation in ordinary usage involves "the process of restoring an individual ... to a useful and constructive place in society through some form of vocational ... retraining or through relief, financial aid, or other reconstructive measure." Webster's Third New International Dictionary 1949 (1961). In legal parlance and in connection with alimony, rehabilitation "contemplates sums necessary to assist a divorced person in regaining a useful and constructive role in society through vocational or therapeutic training or retraining and for the further purpose of pre-

venting financial hardship on society or individual during the rehabilitative process." Black's Law Dictionary 1157 (5th ed. 1979). Both definitions contemplate the enhancement of an individual's capacity to function independently and with economic security in society. Likewise, the statute in question expresses the General Assembly's intent that the economically disadvantaged spouse be rehabilitated whenever possible and provides guidelines for the court to consider when "determining the nature, amount, length of term, and manner of payment." The concept of rehabilitation in the statute is the improvement of one's present and future capacity to function independently in society.

The presumption that the state of marriage in and of itself meets the economic needs of the female, or indeed of either spouse, is an antiquated presumption that may not be indulged in modern society. It is an anachronism. The reality of today's married society is that both husband and wife usually are employed. Moreover, the remarriage may be to a spouse who earns less, is diseased, disabled, unemployed, retired, or just plain lazy. The possibilities are endless. As a result, the remarriage may be a source of financial drain, not support.

We think the legislature had those facts of life in mind when they provided in the statute that "the court may grant an order for payment of support and maintenance on a *long term basis* or until the *death or remarriage* of the recipient" (emphasis added), whereas the statutory language provides no such contingencies for rehabilitative alimony. We therefore hold that the alimony awarded Marion Gerlach was *in solido* and not subject to termination on remarriage.

As the Court of Appeals has previously noted in its opinions, the advent of rehabilitative support did not totally displace permanent alimony; the courts may still award long-term support and maintenance until remarriage or death of the recipient in situations where rehabilitation is simply not feasible. *Cranford v. Cranford*, 772 S.W.2d 48, 51 (Tenn.App.1989); *Ingram v. Ingram*, 721 S.W.2d 262, 263 (Tenn.App.1986). Where rehabilitative support is awarded, it may be made subject to conditions imposed by the court or agreed to by the parties.[1] But where the rehabilitative award has been made for a fixed amount, the award must be considered nonmodifiable, even if it is to be paid in installments and not in a lump sum. The certainty that results from such a rule benefits both parties, allowing each to make long-range financial plans for their own futures and for the future of any children affected by the break-up of the marriage. Unnecessary disruption of financial plans and expectations does not serve the policy fostered by the legislature in its efforts to provide rehabilitation for economically disadvantaged family members faced with marital dissolution. The rule we have recognized today will foster that legislative policy of rehabilitation.

The judgment of the Court of Appeals is reversed and the case is remanded to the trial court for implementation of the judgment entered by this Court in the plaintiff's favor. The total amount of the in solido award is easily calculable at $900 per month for 48 months. It should be offset by the amount already paid to the plaintiff. Costs are taxed to the defendant.

REID, C.J., and DROWOTA and ANDERSON, JJ., concur.

O'BRIEN, J., dissents in separate opinion.

O'BRIEN, Justice, dissenting.

I disagree with the majority opinion because it is clearly an overt effort to legislate by judicial fiat. Under the guise of adopting a better rule for the award of rehabilitative, temporary support and maintenance, the majority ignores the intent of

1. If trial courts wish to retain the right to modify an award of rehabilitative support, they should either place certain conditions on the award or not make it for a sum certain over a fixed period of time.

the Legislature, and in effect, rewrites T.C.A. § 36–5–101.

The issue involved here, clearly stated in appellant's brief, is whether rehabilitative alimony paid in monthly installments for a specified term, without any conditions for termination based upon future contingencies, constitutes alimony in futuro instead of alimony in solido.

This case has followed a long and tortuous course in reaching this Court. I agree largely with the statement of facts related in the majority opinion with a few exceptions pertinent to the issue. The final decree of divorce in this case was entered on 20 May 1986. The trial court ordered $300 per month to the wife as *temporary rehabilitative alimony* until 30 September 1986, for the express purpose of permitting her to finish her nursing studies and secure a certificate as a Licensed Practical Nurse. A request for permanent alimony was specifically denied. The trial court did decree that at such time as the husband began to draw his retirement benefits, from whatever source, that the wife was awarded forty percent (40%) of such amount, calculated as of the date of the divorce.

The Court of Appeals, after considering relevant factors including those set forth in T.C.A. § 36–5–101(d), decided that the temporary rehabilitative alimony was insufficient to allow the wife to rehabilitate herself. They found it reasonable that she should be afforded the opportunity to secure the additional education leading toward an RN degree which would equip her to provide a better life for herself and the children. In view of her *potential for rehabilitation* they agreed with the trial court decision that rehabilitative alimony was indicated. However, they concluded that modification in the amount and duration of the award was necessary to enable her to obtain her objective. They modified the final decree of the trial court to award $900 per month as rehabilitative alimony beginning 20 May 1986, and continuing each month thereafter for a period of four (4) years. Application for appeal to this Court was denied on 31 August 1987. The

case was remanded to the trial court for further proceedings.

The trial court enforced the Court of Appeals judgment until 22 June 1989. When on application of Mr. Isbell the monthly rehabilitative alimony was suspended, effective 14 June 1989, based on the stipulation that plaintiff had entered into a marriage with Wayne Frazier on 2 May 1989. A final order was entered on 11 September 1989 terminating the rehabilitative alimony due to plaintiff's remarriage. This judgment was appealed by the plaintiff to the Court of Appeals.

The Court of Appeals considered the entire record in the court below, from the origin of the case. They then proceeded to analyze the issue in accordance with the opening paragraph of T.C.A. § 36–5–101(d) which reads as follows:

It is the intent of the general assembly that a spouse who is economically disadvantaged relative to the other spouse be rehabilitated whenever possible by the granting of an order for payment of *rehabilitative, temporary support and maintenance.* Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the Court may grant an order for payment of support and maintenance on a long-term basis or until *the death or remarriage of the recipient* except as otherwise provided in subdivision (a)(3). (Emphasis supplied).

Whether or not the Court of Appeals has erred in the application of T.C.A. § 36–5–101(a)(3) in this case is not pertinent to the error of the majority in amending the statute and holding that "where the rehabilitative award has been made for a fixed amount, the award must be considered non-modifiable even if it is to be paid in installments and not in a lump sum." In reaching this conclusion they rely on the opinion in *Gerlach v. Gerlach,* an unreported case of the Court of Appeals, Eastern Section, at Knoxville, 6 October 1988.

Since at least as early as the year 1918, an unpublished opinion of a court has not

been regarded as general authority. This Court has discouraged citing unpublished opinions of its members. *Phoenix Cotton Oil Co. v. Royal Indemnity Co.*, 140 Tenn. 438, 443, 205 S.W. 128 (1918); *Board of Commissioners of Union City, et al v. Obion County, et al*, 188 Tenn. 666, 222 S.W.2d 7 (1949); *Fisher v. State*, 197 Tenn. 594, 277 S.W.2d 340, 341 (1955); *Shepherd v. Henderson*, 1 Tenn.Cr.App. 694, 449 S.W.2d 726, 735 (1969); *Cook v. State*, 506 S.W.2d 955, 958 (Tenn.Cr.App.1973). This case is a bright line example of why unpublished cases should be confined to their facts and not considered as general authority. In *Gerlach* the wife was granted a divorce and "rehabilitative alimony." The decree provided the rehabilitative alimony was to be paid at the rate of $400 per month for 42 consecutive months. When she remarried the husband stopped the payments. In a subsequent hearing the trial court found that the alimony payments were alimony *in solido*. The Court of Appeals sustained that finding. There was no appeal taken from that ruling.

In the present case the plaintiff testified that she dropped out of school because of stress and poor grades. It is obvious from her testimony that she had great difficulty in maintaining the grade average necessary to attain her goal. A strong possibility exists that she may never resume her training. To require the defendant to continue to pay $900 per month as rehabilitative, temporary support and maintenance to an ex-spouse who may have remarried to a destitute, or just plain lazy husband, as suggested in *Gerlach*, is purely punitive. As the court remarked in that case, "the possibilities are endless" and to state, as this Court presumes to do, that where the rehabilitative award has been made for a fixed term, the award must be considered non-modifiable, even if it is to be paid in installments, is a prohibitive, unwarranted, alteration of the statute which is beyond the authority of this Court.

The second sentence of T.C.A. § 36-5-101(d) distinctly provides that "Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, includ-

ing those set out in this subsection, then the Court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient ..." When read in the disjunctive it is plain that subsection (d) conforms precisely with subsection (a)(1) of the statute to leave a decree for suitable maintenance and support, either rehabilitative and temporary or on a long-term basis, entirely within the trial court's control subject to the proscription of T.R.A.P. 13(d).

The amount of alimony to be allowed in any case is a matter for the discretion of the trial court in view of the particular circumstances. *Newberry v. Newberry*, 493 S.W.2d 99 (Tenn.App.1973). The appellate courts are disinclined to review such discretion except in cases where it has manifestly been abused. *Crouch v. Crouch*, 53 Tenn.App. 594, 385 S.W.2d 288 (1964).

I dissent.