# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

DEBORAH LOIS OAKS )
)
    Plaintiff/Appellee )    Appeal No.
) 01-A-01-9901-CH-00046
v. )
) Williamson County Chancery
CLIFTON EDWARD OAKS ) No. 24516
)
    Defendant/Appellant )
)

**FILED**

**September 22, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CHANCERY COURT
FOR WILLIAMSON COUNTY


THE HONORABLE RUSS HELDMAN PRESIDING



ROBERT TODD JACKSON
222 SECOND AVENUE NORTH
SUITE 419
NASHVILLE, TENNESSEE 37201

ATTORNEY FOR DEFENDANT/APPELLANT



J. RUSSELL PARKES
102 WEST 7TH STREET
POST OFFICE BOX 692
COLUMBIA, TENNESSEE 38402

ATTORNEY FOR PLAINTIFF/APPELLEE


**AFFIRMED AS MODIFIED AND REMANDED**


                    PATRICIA J. COTTRELL, JUDGE
CONCUR:
CANTRELL, P. J.
CAIN, J.

# OPINION

This appeal involves the division of property at the dissolution of a fifteen year marriage. Mr. Oaks appeals the division of marital property, the award of rehabilitative alimony and the award of Ms. Oaks's attorney fees. He asks for costs and attorney fees on appeal. Ms. Oaks appeals the court's failure to divide Mr. Oaks's pension and also seeks attorney fees on appeal. We affirm the trial court's order as modified.

## I.

The parties separated after fifteen years of marriage. They had no children together. Mr. Oaks was the primary breadwinner, earning approximately $60,000 per year at the time of the divorce, having worked for one employer throughout the marriage. Ms. Oaks worked at clerical jobs for most of the marriage, but at most earned $20,000 per year. The parties moved several times because of Mr. Oaks's work. Ms. Oaks left her jobs and retirement plans each time the parties moved. Ms. Oaks is 47 years old, is currently unemployed, and has no retirement plan. Mr. Oaks is 51 years old and has three retirement plans which together, when computed in 1998, would provide him more than $2,900 per month upon his retirement. According to the parties' stipulations and documentation from the U.S. Railroad Retirement Fund, the Tier I plan, worth $1,391 per month, is not subject to division, but the Tier II plan, worth $654.78 per month, and the CSX Pension Plan, worth $960 per month, are subject to division.

Ms. Oaks moved from the home in February 1997 and filed for divorce on alternate grounds of irreconcilable differences and inappropriate marital conduct. Mr. Oaks filed an answer and counterclaim alleging irreconcilable differences and inappropriate marital conduct on the part of Ms. Oaks. A few months after

the separation, Ms. Oaks began a relationship with another man. Prior to the divorce, Ms. Oaks moved into the other man's house. Mr. Oaks subsequently amended his complaint to allege adultery. The court found that Ms. Oaks did not have grounds for divorce. The divorce was awarded to Mr. Oaks on grounds of Ms. Oaks's post-separation adultery.

The court divided the assets of the parties. The household items were awarded according to the parties' own plan. The court then awarded Mr. Oaks property that the parties valued at $76,762.67, subtracting a debt owed to his employer from the total value. The court awarded Ms. Oaks property valued by the parties at $112,000. Ms. Oaks was then ordered to pay the credit card debts, totaling $18,454.90. Mr. Oaks was awarded his pensions in their entirety.

## II.

We first consider the division of marital property. The trial court has wide discretion in dividing the marital estate upon divorce. Tenn. R. App. P. 13(d); *see Loyd v. Loyd*, 860 S.W.2d 409, 411 (Tenn. App. 1993). Our review of findings of fact is *de novo* upon the record, with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d).

Mr. Oaks first argues that the trial court failed to make an equitable division of the marital assets pursuant to Tenn. Code Ann. § 36-4-121(1996).[1] Ms. Oaks argues that the trial court should have awarded her a portion of Mr. Oaks's pensions in addition to the other marital property she received.

It is not disputed that, if the pensions are not included in the calculation,

---

[1] § 36-4-121. Equitable division, distribution or assignment of marital property

(a)(1) In all actions for divorce or separate support and maintenance, the court having jurisdiction thereof may, upon request of either party, and prior to any determination as to whether it is appropriate to order the support and maintenance of one (1) party by the other, equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just.

the court awarded Ms. Oaks more of the marital property than Mr. Oaks.[2] When

the pensions are included in the calculation, however, it is clear that Mr. Oaks

was awarded the major portion of the couple's assets. We are of the opinion that

the equities of the case dictate that Ms. Oaks should have a part of the pensions

as well as her award of the other property.

In awarding marital property, the court must make an "equitable division"

of property. Tenn. Code Ann. § 36-4-121(a). Equitable is not necessarily equal,

however, and the court must consider several factors[3] in determining an

equitable division of the marital property. Tenn. Code Ann. § 36-4-121(c); *see*

*Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. App. 1991).

After a fifteen year marriage, Ms. Oaks is 47 years old and has never

earned more than $20,000 per year. There is no evidence that she will be able

to earn a higher salary in the future. She left several jobs and retirement plans

---

[2] The parties dispute the percentages of the property, other than the retirement benefits, that the court awarded to each of them. By Mr. Oaks's calculation, the court awarded Ms. Oaks 59% of the marital property. Ms. Oaks claims that the $18,454.90 in marital debt the court assigned to her should be taken into consideration when comparing the awards to the parties. When the debt is subtracted from her award, Ms. Oaks argues, the award to her is closer to 55% than to 59%. Since a division of property need not be equal in order to be equitable, these percentages are provided merely to show the parties' positions.

[3] § 36-4-121(c) In making equitable division of marital property, the court shall consider all relevant factors including:
(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;
(9) The tax consequences to each party; and
(10) Such other factors as are necessary to consider the equities between the parties.

4

to move with Mr. Oaks as he pursued his career. Mr. Oaks, on the other hand, currently earns approximately $60,000 per year and has generous retirement plans.

Given the length of the marriage, Ms. Oaks's lower earning capacity, her contributions as a homemaker, and her inability to vest in a retirement system due to the couple's moves, we find that the court erred in not dividing the pensions. Ms. Oaks testified that Mr. Oaks began contributing to the plans after the marriage. Any increase in pension plans during the marriage, whether vested or unvested, is marital property. *See Cohen v. Cohen*, 937 S.W.2d 823, 828 (Tenn. 1996); Tenn. Code Ann. § 36-4-121(b)(1)(A); *see also Umstot v. Umstot*, 968 S.W.2d 819, 822 (Tenn. App. 1997) (affirming the trial court's award of husband's pension monies accrued before the marriage to husband and dividing the monies accrued after the marriage). Ms. Oaks has demonstrated that the pension funds, other than the Tier I benefits, are marital property and subject to division.

Accordingly, after considering the equities in the case, particularly the parties' earning capacities and Ms. Oaks's lack of any retirement plan,[4] we order that one of Mr. Oaks's retirement plans, the CSX Pension Plan, be divided equally between the parties. The value to be divided should be the plan's value as of the date of the divorce, or as near that date as possible. Mr. Oaks's Tier I benefits are not divisible, and we affirm the trial court's award of the Tier II plan benefits to Mr. Oaks. The order of the trial court that the CSX Pension Plan be awarded solely to Mr. Oaks is modified to award half to Ms. Oaks. The trial court is directed to determine the proper procedure required for the division of

_____

[4] Documentation from the Railroad Retirement Board indicates Ms. Oaks is eligible for a divorced spouse benefit of $695 per month which will not reduce Mr. Oaks's annuity.

the pension plan, and to issue an appropriate order to accomplish such division. The remainder of the trial court's award of marital property is affirmed.

## III.

We next consider whether the trial court erred in its award of rehabilitative alimony. A trial court has broad discretion in determining whether to award alimony. *See Loyd*, 860 S.W.2d at 412. The decision is factually driven and requires a balancing of the factors listed in the statute.[5] *Id.* Of these factors, need and the ability to pay are the most critical. *Id.*

The trial court awarded Ms. Oaks $500 per month for three years as rehabilitative alimony. Mr. Oaks argues that Ms. Oaks should not get any alimony at all. Mr. Oaks contends that because Ms. Oaks did not use the word "rehabilitative" in her request for alimony, he was prejudiced by the omission. He claims, also, that Ms. Oaks's "fault," the post-separation adultery, should have precluded an award of alimony. He argues, further, that Ms. Oaks does not

---

[5] Tenn. Code Ann. § 36-5-101(d)(1)    ... In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
 (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
 (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
 (C) The duration of the marriage;
 (D) The age and mental condition of each party;
 (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
 (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
 (G) The separate assets of each party, both real and personal, tangible and intangible;
 (H) The provisions made with regard to the marital property as defined in § 36-4-121;
 (I) The standard of living of the parties established during the marriage;
 (J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
 (K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so;  and
 (L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

need the alimony because of her minimal living expenses at the time of the divorce and her award of marital property.

Tennessee law provides for three types of alimony: (1) rehabilitative alimony, which provides modifiable, temporary support for a period of adjustment sufficient to enable a dependent spouse to become partially or totally self-sufficient; (2) periodic alimony or alimony *in futuro,* a continuing, but modifiable, support obligation to an economically disadvantaged spouse; and (3) alimony *in solido*, an unmodifiable lump sum award which may be paid over time. Tenn. Code Ann. § 36-5-101(d)(1); *see Loria v. Loria*, 952 S.W.2d 836, 838 (Tenn. App. 1997). The legislature's stated preference is for rehabilitative alimony whenever possible. Tenn. Code Ann. § 36-5-101(d)(1). A finding that rehabilitation is "not feasible" is required before an award of alimony *in futuro* is appropriate. *Id.*; *see also Loria*, 952 S.W.2d at 840.

Mr. Oaks argues that the award was improper because it was not specifically requested. The alimony was, indeed, requested in Ms. Oaks's complaint, "Plaintiff is in need of spousal support, both temporary and permanent and/or *in solido*" and the prayer for relief, "that Plaintiff be awarded temporary and permanent alimony, alimony in solido ..." and in her attorney's opening statement, "We have a request for alimony ... ." Mr. Oaks was on notice, from the initial complaint for divorce, that Ms. Oaks sought alimony. He could not have been prejudiced by her failure to say the magic word, "rehabilitative," since rehabilitative alimony is favored. The determination of whether to award any type of alimony must be made after consideration of the economic disparity between the parties and the statutory factors listed above, regardless of the type of alimony awarded. Tenn. Code Ann. § 36-5-101(d)(1)(A) - (L). We fail to see how Mr. Oaks could have been prejudiced by

an award of rehabilitative alimony rather than *in futuro* or *in solido* alimony.

Mr. Oaks's argument that Ms. Oaks's fault should have precluded an alimony award is also without merit. In awarding alimony to a party, the court must consider the many factors enumerated above. Tenn. Code Ann. § 36-5-121(d)(1). The predominant factors to consider, however, are the spouse's need, and the obligor spouse's ability to pay. *See Loyd*, 860 S.W.2d at 412. While "the relative fault of the parties" is one of the factors the court may consider in awarding alimony, the court has the discretion to consider fault as it "deems appropriate to do so." Tenn. Code Ann. § 36-5-101(d)(1)(K). Here, the court was well aware of Ms. Oaks's post-separation adultery, having granted the divorce on those grounds, but, in its discretion, did not consider her fault sufficient to refuse alimony.

Mr. Oaks contends that Ms. Oaks had no need for alimony, that her living expenses were minimal because she was living with another man. Ms. Oaks testified that she had been unemployed since an industry layoff and then had surgery. She planned to return to work after recovery from surgery. She also anticipated having her own home and car, and needing money to make those payments. She testified further that she would prefer not to remain dependent on another person but had little choice in view of her current financial situation. While living with a third person establishes a rebuttable presumption that the recipient does not need alimony under Tenn. Code Ann. § 36-5-101(a)(3)(A), that section deals with alimony *in futuro* specifically. *See Isbill v. Isbill*, 816 S.W.2d 735, 738 (Tenn. 1991). Ms. Oaks wants to become self-sustaining. The purpose of rehabilitative alimony, as opposed to alimony *in solido* or alimony *in futuro*, is "to provide a temporary income during a period of adjustment" and to allow the "dependent spouse to become partially or totally self-sufficient."

8

*Loria*, 952 S.W.2d at 838.

Considering particularly Ms. Oaks's need and Mr. Oaks's ability to pay, we find no error in the court's award of rehabilitative alimony to Ms. Oaks. We affirm the trial court's alimony award.

IV.

We next consider whether the trial court erred in ordering Mr. Oaks to pay Ms. Oaks's attorney fees of $6,017.65 as additional alimony *in solido*. Mr. Oaks argues, again, that Ms. Oaks's fault should have been taken into account in setting the award of attorney fees. He further argues that Ms. Oaks has the ability to pay her attorney from her property award.

Ms. Oaks claims that she should not be required to defray her legal expenses by spending the assets that will provide her with a source of income in the future. She again points to Mr. Oaks's greater earning capacity.

For the reasons stated above, we affirm the award of attorney fees as alimony *in solido* to Ms. Oaks.

V.

The order of the trial court is affirmed as modified. This case is remanded to the trial court for entry of an order accomplishing the division of the pension plan and such other proceedings as may be necessary. The costs of this appeal are taxed to Mr. Oaks.

_____
PATRICIA J. COTTRELL, JUDGE

CONCUR:

_____
BEN H. CANTRELL, P. J., M. S.

_____
WILLIAM B. CAIN, JUDGE