T.C. Summary Opinion 2008-139

UNITED STATES TAX COURT

MICHAEL WAYNE AND JOAN ELIZABETH BEDWELL, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18801-06S.                    Filed November 3, 2008.

Michael Wayne Bedwell and Joan Elizabeth Bedwell, pro sese.

David Q. Cao, for respondent.

GERBER, Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and

_____

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 2004, the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

this opinion shall not be treated as precedent for any other case.

Respondent determined a $938 deficiency in petitioners' 2004 Federal income tax. The deficiency determination was based on the disallowance of a $6,500 deduction petitioner husband claimed as alimony on petitioners' 2004 Federal income tax return. The question we consider is whether petitioners are entitled to the $6,500 alimony deduction.

## Background[2]

Petitioners resided in Texas at the time their petition was filed. Petitioner Michael Bedwell (Mr. Bedwell) was married to petitioner Joan Elizabeth Bedwell (Mrs. Bedwell) during 2004. Mr. Bedwell was married to Karen Melissa Edwards (Ms. Edwards) until June 14, 2003, when they were divorced.

The final divorce decree contained a detailed division of property between Mr. Bedwell and Ms. Edwards. Each party was allowed to retain his or her personal property, and to be responsible for any debt connected with the delineated personal property. Each party was also allowed to keep his or her individual retirement accounts (IRAs). Mr. Bedwell was allowed to keep his real property in Texas and jointly owned real property in Tennessee.

---

[2] The parties' stipulation of facts and attached exhibits is incorporated by this reference.

On the basis of testimony and record of the divorce proceeding, Mr. Bedwell was ordered to pay Ms. Edwards $13,000, of which $6,500 was payable during 2003 and $6,500 was payable on either the sale of the jointly owned real property in Tennessee, or March 1, 2004, whichever was earlier. The divorce decree does not specifically denominate the purpose of the $13,000 payment; i.e., whether it was alimony or a property settlement, or whether the requirement to make the two annual payments would terminate upon the death of either party. The value of the Tennessee real property was not set forth in the decree, and it was not designated as the source of the $13,000 in payments to Ms. Edwards. In accordance with the divorce decree, Mr. Bedwell made equal $6,500 payments to Ms. Edwards during 2003 and 2004.

In connection with the divorce proceeding, the deposition of Ms. Edwards was taken on December 11, 2002. Ms. Edwards received only limited amounts of monthly income. She was able to live with friends and incurred only nominal living expenses. She did some work at a horse farm in exchange for board and food for her horses and was rarely paid anything in exchange for her work. Ms. Edwards was also a substitute aerobics instructor and occasionally received $15 for teaching a class. Ms. Edwards had outstanding debt obligations that relatives and others were helping to pay.

Petitioners, on March 6, 2005, timely filed their 2004 Federal income tax return on which they claimed as an alimony deduction the $6,500 payment to Ms. Edwards.

## Discussion

The sole question we consider is whether the $6,500 payment made to Ms. Edwards was alimony or part of a property settlement. On brief, respondent argues that he bears no burden in this case. Petitioners have not questioned respondent's argument and, instead, argue that the evidence in the record would support our holding that the $6,500 payment is deductible alimony. Accordingly, to the extent relevant, petitioners bear the burden of proof in this proceeding. See sec. 7491; Rule 142(a).

Section 215(a) allows a deduction for alimony paid during a taxable year. Section 215(b) broadly defines "alimony" as a payment includable in the gross income of the recipient. Section 71(b)(1) provides that a payment is "alimony or separate maintenance" if:

>     (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

>     (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

>     (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such
payment for any period after the death of the payee
spouse and there is no liability to make any payment (in
cash or property) as a substitute for such payments after
the death of the payee spouse.

The parties are in agreement that the first three requirements of section 71(b)(1) are met.  Their disagreement focuses upon whether the fourth requirement is met.  The question of whether Mr. Bedwell was required to make the $6,500 payments after Ms. Edwards's death is a matter to be decided under the law of the State of Tennessee.  In an unreported case the Tennessee court of appeals explained as follows the preference under Tennessee law for rehabilitative and transitional spousal support:

> There are four separate classes of spousal support in Tennessee, including rehabilitative alimony,[1] alimony in futuro (or periodic alimony),[2] alimony in solido (or lump-sum alimony),[3] and transitional alimony.[4]  Tennessee law recognizes a statutory preference for rehabilitative spousal support and transitional spousal support.  T.C.A. § 36-5-101(C)(Supp. 2004) (now § 36-5-121(d)(2)); Bratton v. Bratton, 136 S.W.3d 595, 605 (Tenn. 2004); Perry v. Perry, 114 S.W.3d 465, 467 (Tenn. 2003); Crabtree v. Crabtree, 16 S.W.3d 356, 358 (Tenn. 2000).  This statutory preference does not entirely displace the other forms of spousal support when the facts of the case warrant long-term or more open-ended support. Aaron v. Aaron, 909 S.W.2d 408, 410 (Tenn. 1995); Isbell v. Isbell, 816 S.W.2d 735, 739 (Tenn. 1991).

[1] T.C.A. § 36-5-101(d)(1)(C) (Supp. 2004) (now recodified at T.C.A. § 36-5-121).
[2] T.C.A. § 36-5-121(f).
[3] T.C.A. § 36-5-121(h).
[4] T.C.A. § 36-5-101(d)(1)(D) (Supp. 2004) (now recodified at T.C.A. § 36-5-121(g)).

Gillespie v. Gillespie, No. E2006-00734-R3-CV, slip op. at 4
(Tenn. Ct. App. Dec. 19, 2006).

Petitioners argue that the $6,500 payments constituted
rehabilitative or transitional alimony.  Rehabilitative or
transitional alimony terminates upon the death of the recipient.
Tenn. Code Ann. sec. 36-5-101(d)(1) and (2) (Supp. 2004).
Accordingly, if the $6,500 payment is in futuro, transitional, or
rehabilitative alimony under Tennessee law, Mr. Bedwell would be
entitled to a $6,500 deduction, and if it is in solido he would
not be so entitled.

The Tennessee rehabilitative support and maintenance
statute, in relevant part, provides as follows:

> (d)(1)  It is the intent of the general assembly that a
> spouse, who is economically disadvantaged, relative to
> the other spouse, be rehabilitated whenever possible by
> the granting of an order for payment of rehabilitative,
> temporary support and maintenance.  Where there is such
> relative economic disadvantage and rehabilitation is
> not feasible in consideration of all relevant factors,
> including those set out in this subsection, then the
> court may grant an order for payment of support and
> maintenance on a long-term basis or until the death or
> remarriage of the recipient except as otherwise
> provided in subdivision (a)(3).  Rehabilitative support
> and maintenance is a separate class of spousal support
> as distinguished from alimony in solido and periodic
> alimony.  In determining whether the granting of an
> order for payment of support and maintenance to a party
> is appropriate, and in determining the nature, amount,
> length of term, and manner of payment, the court shall
> consider all relevant factors, including:
>
>> (A)  The relative earning capacity, obligations,
>> needs, and financial resources of each party,
>> including income from pension, profit sharing or
>> retirement plans and all other sources;

(B)  The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C)  The duration of the marriage;

(D)  The age and mental condition of each party;

(E)  The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F)  The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G)  The separate assets of each party, both real and personal, tangible and intangible;

(H)  The provisions made with regard to the marital property as defined in § 36-4-121;

(I)  The standard of living of the parties established during the marriage;

(J)  The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K)  The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L)  Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. sec. 36-5-101(d)(1) (West 2002).

Transitional alimony was enacted in a 2003 Tennessee statute, which in pertinent part provides as follows:

> Transitional alimony means a sum of money payable by (1) one party to, or on behalf of, the other party for a determinate period of time. Transitional alimony shall terminate upon the death of the recipient and as provided in subdivision (a)(3) which provision shall apply to transitional alimony * * * . Transitional alimony is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded, such as a petition for an order of protection.

Tenn. Code Ann. sec. 36-5-101(d)(1)(D) (West 2003).

Respondent contends the transitional alimony statutory provision may not have been enacted at the time of the issuance of the divorce decree. The provision was to have taken effect "upon becoming law". 2003 Tenn. Pub. Acts ch. 305. Although the provision contains the statement that it was "signed into law on August 8, 2003", there is a legislative amendment to the provision indicating that chapter 305 was approved by the Governor on June 11, 2003. This is significant, because the divorce decree is dated June 14, 2003. Id. n.1.

We have considered the record and conclude and hold that the $6,500 payment was deductible alimony. The record presents a factual pattern that fits within the Tennessee statutory and caselaw definitions for rehabilitative or transitional support or

maintenance.[3]  We note that Tennessee law contains a statutory preference for rehabilitative spousal support and transitional spousal support.  Tenn. Code. Ann. sec. 36-5-101(d)(1)(C) (Supp. 2004).

The divorce decree contains a detailed division of the property of the parties.  After the division of property, the decree provides for payments to Ms. Edwards over and above the property division.  The evidence in the record shows that Ms. Edwards was not in a position to support herself and the property provided for her in the decree was subject to debt and she was also accruing monthly expenditures (such as expenses for her horses which were being boarded by others).  In addition, Ms. Edwards had no means of support other than the nominal amounts she was earning, which fell far short of her obligations and incurred expenses.  The $6,500 payments were obviously designed to temporarily rehabilitate Ms. Edwards's financial situation and to give her time to become financially self-sufficient.  To that effect, the decree of the payments fits exactly within the intent and definition of rehabilitative alimony, which terminates upon the death of either party.

---

[3] Because we have decided that the rehabilitative provision applies, it is unnecessary to decide the effective date of the transitional alimony provision.  It is noted, however, that reliance on the transitional alimony provision would also have resulted in a holding for petitioners.

Finally, we note that it is highly unlikely that the $6,500 payments were part of the property division. Each party was given a substantial amount of property. The property was their separate property with the exception of a jointly owned parcel of realty in Tennessee. The payments, however, were not conditioned on the sale of the Tennessee real property, and there is no indication in the record that the Tennessee property was burdened by debt, purchased with assets of Ms. Edwards, and/or had any equity or value. Accordingly and although the divorce decree was not specific, the award of the temporary alimony is, under the facts of this case, not a property settlement.

To reflect the foregoing,

Decision will be entered for petitioners.