# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FILED

**November 25, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

EUGENE CALVIN CHEATHAM,           )
                                  )
    Plaintiff/Appellant,          )
                                  )     Maury Chancery
                                  )     No. 92-729
VS.                               )
                                  )     Appeal No.
                                  )     01A01-9508-CH-00380
KARYN ELIZABETH CHEATHAM,         )
                                  )
    Defendant/Appellee.           )


### APPEAL FROM THE CHANCERY COURT FOR MAURY COUNTY
### AT COLUMBIA, TENNESSEE

### THE HONORABLE JIM T. HAMILTON, CHANCELLOR


For the Plaintiff/Appellant:

W. Gary Blackburn
David F. Gore
Blackburn, Slobey, Freeman & Happell
Nashville, Tennessee

For the Defendant/Appellee:

Mary Frances Lyle
Bruce, Weathers, Corley,
    Dughman & Lyle
Nashville, Tennessee


## AFFIRMED IN PART; MODIFIED IN PART
## AND REMANDED


WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal stems from the dissolution of a twenty-seven year marriage. Two years after entering a relationship with another woman, the husband filed suit for divorce in the Chancery Court for Maury County. The wife initially resisted the divorce but later counterclaimed for divorce. The trial court heard the case without a jury and awarded the wife a divorce based on the husband's inappropriate marital conduct. The trial court also divided the marital estate equally, awarded the wife $3,000 per month in long-term spousal support, and ordered the husband to pay an additional $41,000 for the wife's legal expenses. The husband takes issue on this appeal with the valuation of his business, the division of the marital estate, the long-term spousal support award, and the award for legal expenses. While we have determined that the spousal support award is proper, we have decided that the division of the marital estate must be modified to correct a classification error and that the award for legal expenses must also be revised. Accordingly, we modify and affirm the judgment.

## I.

Karyn Elizabeth Cheatham and Eugene Calvin Cheatham met while they were attending Ohio State University. They were married in July 1965, when Mr. Cheatham was a rising sophomore, and Ms. Cheatham was about to begin her senior year. Ms. Cheatham did not complete college following the marriage. Both she and Mr. Cheatham worked until Mr. Cheatham graduated from Ohio State in 1969. Thereafter, the parties moved to Michigan where Mr. Cheatham obtained a master's degree in public policy from the University of Michigan.

Following the birth of their first child in 1971, the parties moved to Nashville because Mr. Cheatham had accepted an appointment at Fisk University as an assistant professor and Director of the Center for Urban Public Affairs. The parties adopted their second child in 1973. In addition to her role as a homemaker, Ms. Cheatham briefly operated a small, part-time crafts business. The parties moved to North Carolina in 1976 so Mr. Cheatham could take a job with the State of North Carolina. He left that position a short time later to work at North Carolina State University.

The parties experienced their first marital difficulties in North Carolina and sought marital counseling while they were there.

The parties returned to Nashville in 1978. Mr. Cheatham worked as a consultant, and later joined with Tony and Bill Pogue, two venture capitalists, to found Advanced Integrated Technology, Inc., a business providing automation and computer consulting services to other businesses. After the Small Business Administration certified the company as a Section 8(a) business,[1] the company became eligible for preferences with regard to government contracts. Thereafter, the company procured several lucrative government contracts, as well as contracts with large industrial customers.

Ms. Cheatham obtained an advance contract from a publisher for a book in 1980, but by this time life at home was not going smoothly. Mr. Cheatham had an affair in 1981 which he concealed from Ms. Cheatham until after the parties separated. Sensing the changes in the relationship, Ms. Cheatham suggested more marital counseling, but Mr. Cheatham declined, blaming the demands of his business for his long absences from home.

Mr. Cheatham's business and personal relationships changed in the early 1990s. In 1991 he helped start another business called Progressive Communications Technology. The business sells automated operator services, and Mr. Cheatham owns twenty-five percent of the company. One year later, in 1992, the Pogue Brothers withdrew from Advanced Integrated Technology, and the company repurchased their stock. At about the same time, Mr. Cheatham began having an affair with Diane Murphy who was an employee of Progressive Communications Technology.

Mr. Cheatham became increasingly distant, and Ms. Cheatham began to suspect that his relationship with Ms. Murphy was more than simply business. In early October 1992, Mr. Cheatham announced that "I just can't do this any more" and moved out of the house. Mr. Cheatham soon began lavishing extravagant gifts on

---

[1]The Section 8(a) program is a business development program administered by the Small Business Administration for the benefit of socially and economically disadvantaged firms. *See* 15 U.S.C.A. § 637(a)(1)(C) (West 1997).

Ms. Murphy and her daughter, and in early 1993, Mr. Cheatham and Ms. Murphy began living together as husband and wife. Ms. Murphy quit her job at Progressive Communications Technology in the spring of 1993. From that time on, except for some child support and assistance from Ms. Murphy's parents, Mr. Cheatham has supported Ms. Murphy and her daughter.

Mr. Cheatham filed for an irreconcilable differences divorce in December 1992. Ms. Cheatham contested the divorce and professed that she desired a reconciliation. In August 1994, Ms. Cheatham filed an amended counterclaim seeking a divorce based on irreconcilable differences, cruel and inhuman treatment, and adultery. The trial court heard the proof during September and October 1994 and filed its judgment in December 1994. The trial court granted Ms. Cheatham the divorce based on inappropriate marital conduct. It also determined that the parties should each receive one-half of the marital estate, which the trial court valued at $1,108,175. The trial court also directed Mr. Cheatham to pay Ms. Cheatham spousal support in the amount of $3,000 per month until her death or remarriage. Finally, the trial court awarded Ms. Cheatham $41,141.98 to defray her legal expenses because Mr. Cheatham had "attempt[ed] to paint a distorted picture of this martial estate" during the lengthy and sometimes acrimonious pretrial discovery.

## II.
### THE DIVISION OF THE MARITAL ESTATE

We begin by considering the division of the marital estate because the manner in which the trial court allocates marital property and debts can affect its decisions with regard to spousal support. *See* Tenn. Code Ann. § 36-5-101(d)(1)(G) & (H) (Supp. 1997). Mr. Cheatham takes issue with the trial court's distribution on three grounds: (1) that the trial court improperly valued his interest in Advanced Integrated Technology, (2) that the trial court improperly classified four items of property, and (3) that the overall effect of the trial court's division of the marital estate and debts was inequitable.

### A.
### The Classification of the Property

Mr. Cheatham argues that the trial court included property in the marital estate that was not actually marital property. Specifically, he asserts that the trial court should not have classified a 1987 Porsche and a 1992 Jeep Grand Cherokee that were owned or leased by Advanced Integrated Technology and a 1991 Honda Accord and a condominium titled to Diane Murphy as marital property. Ms. Cheatham responds that including this property in the marital estate was, at worst, harmless error because the trial court did not place a value on the Porsche and the Jeep and because the trial court was taking into account the possibility that Mr. Cheatham might have an equitable interest in Ms. Murphy's property.

The division of the marital estate necessarily begins with the classification of the parties' property. *See Brown v. Brown*, 913 S.W.2d 163, 166 (Tenn. Ct. App. 1994); *McClellan v. McClellan*, 873 S.W.2d 350, 351 (Tenn. Ct. App. 1993). Tenn. Code Ann. § 36-4-121 (1996) provides the ground rules for this task by providing the now familiar definitions for "separate property"[2] and "marital property."[3] As a general matter, property must be owned by one or both spouses at the time of the divorce in order to be considered marital property. *See Brock v. Brock*, 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996). Trial courts have broad discretion in classifying and dividing property in divorce proceedings. *See Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983); *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996).

The evidence does not support the trial court's decision to classify these four items as marital property. Even though the courts may look behind the record title of property in cases of this sort, *see Jones v. Jones*, 597 S.W.2d 886, 887 (Tenn. 1979); *Langford v. Langford*, 220 Tenn. 600, 604, 421 S.W.2d 632, 634 (1967), we find no evidence in the record that Mr. Cheatham "acquired" any of this property "during the course of the marriage up to the date of the final divorce hearing." The evidence is undisputed that Advanced Integrated Technology, not Mr. Cheatham, owned or leased the Porsche and Jeep Grand Cherokee. While Mr. Cheatham conceded that he supported Ms. Murphy financially following the separation, there is no evidence that he acquired the 1991 Honda Accord or the condominium and then placed them in Ms. Murphy's name to prevent them from being considered marital

---

[2]*See* Tenn. Code Ann. § 36-4-121(b)(2)(A) - (D).

[3]*See* Tenn. Code Ann. § 36-4-121(b)(1)(A) & (B).

property. By the time of the divorce hearing, the money that Mr. Cheatham had provided to Ms. Murphy was not in the possession of either party, and accordingly neither the money nor its proceeds should have been classified as marital property.

Even though we have determined that the trial court's classification of these four items of property was erroneous, it does not necessarily follow that we must overhaul the trial court's division of the marital estate. Because the trial court assigned no value to these assets, classifying the Porsche and the Jeep Grand Cherokee as marital property had no effect upon the overall distribution of the marital property. The trial court valued Ms. Murphy's 1991 Honda Accord at $5,000 and her interest in the condominium at $5,000. We will assess the ramifications of these classification errors on the overall effect of the division of the marital estate when we consider whether the trial court's division of the marital estate was equitable.

## B.
## The Valuation of the Interest in Advanced Integrated Technology

Mr. Cheatham takes issue with the trial court's valuation of his 65% interest in Advanced Integrated Technology. He argues that Ms. Cheatham's valuation expert based his opinion on erroneous assumptions and that the value placed on his interest by the trial court is not supported by the testimony of either party's expert witness. We have determined that the trial court's valuation of Advanced Integrated Technology is within the range of the valuation evidence.

Mr. Cheatham and the Pogue brothers started Advanced Integrated Technology after the parties returned from North Carolina. At the time of the divorce, the company employed 105 persons and, from 1989 to 1993, grossed between $10,000,000 and $33,000,000 per year. In addition to the government contracts obtained through the Small Business Administration, the company also had contracts with DuPont Corporation, Nissan, Northern Telecom, and McDonald-Douglas.

The Pogue brothers, who owned two-thirds of the company's outstanding shares, decided to withdraw from the business following a dispute with Mr. Cheatham. The company purchased their shares for $1,600,000, leaving Mr.

Cheatham as the sole owner of the company. Following this transaction, Mr. Cheatham represented that the value of his interest in Advanced Integrated Technology was as high as $3,942,059. In June 1993, Mr. Cheatham sold a 35.3% interest in the company to Donnie L. Peters for $690,311, supposedly to honor a prior commitment made to induce Mr. Peters to join the company.[4] Later, in August 1994, Mr. Cheatham violated an order restraining him from alienating property by giving a lender the right to purchase twenty percent of the company's stock in return for a $1,200,000 loan. Just six weeks before the trial, Mr. Cheatham valued his interest in the company at $614,595.

After considering the company's capitalized earnings and net asset value adjusted for the effect of the preferred shares, Ms. Cheatham's valuation expert testified that the value of Advanced Integrated Technology was $942,000. He also determined that Mr. Cheatham effectively owned 52%[5] of the company and that the value of his interest was $489,840. Mr. Cheatham's expert valued Mr. Cheatham's interest in Advanced Integrated Technology at $187,000 by giving greater weight to the company's more recent earnings.

Valuation of marital property is a fact question whose outcome depends on the proof presented by the parties. The parties have the obligation to present competent valuation evidence, and they are bound by the evidence they present. *See Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987). When the parties present conflicting valuation evidence, the trial courts may place a value on the property that is within the range of the values presented. *See Brock v. Brock*, 941 S.W.2d at 902; *Koch v. Koch*, 874 S.W.2d 571, 577 (Tenn. Ct. App. 1993); *Loyd v. Loyd*, 860 S.W.2d 409, 411 (Tenn. Ct. App. 1993). Like other fact questions, a trial court's decision concerning the value of marital property is entitled to great weight on appeal, and we will not second-guess the decision unless it is inconsistent with Tenn. Code Ann. § 36-4-121 or is contrary to the preponderance of the evidence. *See Brock v. Brock*, 941 S.W.2d at 902; *Smith v. Smith*, 912 S.W.2d 155, 157 (Tenn. Ct. App. 1995).

---

[4]Mr. Peters was already working for Advanced Integrated Technology, and the company paid him a bonus sufficient to enable him to purchase the stock.

[5]Even though Mr. Cheatham owned approximately 65% of the company, Ms. Cheatham's expert determined that the value of his interest was diluted by the outstanding option to purchase the 20% interest in the company.

Mr. Cheatham challenges the opinion of Ms. Cheatham's valuation expert on the ground that the expert overlooked the pattern of declining earnings over the past five years and failed to give more weight to the company's recent earnings. Our review of the testimony of Ms. Cheatham's expert does not support these criticisms. Ms. Cheatham's expert determined that the company's earnings history did not show steadily declining revenues but rather a mixed bag of profits and losses because of several non-recurring expenses. He also considered each one of the valuation techniques discussed in *Blasingame v. American Materials, Inc.*, 654 S.W.2d 659, 666 (Tenn. 1983) and then based his opinion on the results of the capitalization of earnings method and the net asset value method.

The choice of the method or methods used to value a corporation depends upon the unique status of each corporation. *See Wright v. Quillen*, 909 S.W.2d 804, 810 (Tenn. Ct. App. 1995). We find no basis for discounting the conclusion of Ms. Cheatham's valuation expert. Accordingly, the evidence does not preponderate against his conclusion that Mr. Cheatham's interest in Advanced Integrated Technology was worth $489,840.

Even though Ms. Cheatham's expert valued Mr. Cheatham's interest in Advanced Integrated Technology at $489,840, it does not necessarily follow that the trial court erred by placing a $600,000 value on this interest. Rather than rounding up the expert proof by $111,000 as Mr. Cheatham claims, the trial court was actually accrediting Mr. Cheatham's own representations about the value of his interest in the company. In a personal financial statement dated August 9, 1994, Mr. Cheatham stated that his interest in Advanced Integrated Technology was worth $614,595. Mr. Cheatham is competent to testify concerning the value of his company and is bound by his representations. We find no error in the trial court's decision to place a value on Mr. Cheatham's interest in Advanced Integrated Technology that is consistent with his own valuation just six weeks before trial.

## C.
### The Division of the Marital Estate

The trial court undertook to award each party exactly one-half of the net value of the marital estate. Nevertheless, Mr. Cheatham asserts that the trial court's division was inequitable because the assets he received were "financially unstable" and "burdened by heavy indebtedness" while the assets Ms. Cheatham received were liquid and unencumbered. After adjusting for the classification errors, we find that the overall effect of the division of the marital property is equitable.

Trial courts have broad discretion when dividing the martial property and allocating the martial debts. *See Fisher v. Fisher*, 648 S.W.2d at 246; *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994); *Koch v. Koch*, 874 S.W.2d at 579. We customarily give these decisions great weight on appeal, *see Wilson v. Moore*, 929 S.W.2d at 372, and we decline to alter these decisions unless they are inconsistent with the factors in Tenn. Code Ann. § 36-4-121 (1996) or are unsupported by the evidence. *See Brown v. Brown*, 913 S.W.2d at 168; *Mahaffey v. Mahaffey*, 775 S.W.2d 618, 622 (Tenn. Ct. App. 1989).

Trial courts have a statutory mandate to divide marital property equitably. *See* Tenn. Code Ann. § 36-4-121(a)(1). Their distribution, however, is not required to be mathematically equal to be equitable. *See Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988); *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). In addition, each party is not entitled to receive a share of each piece of marital property in order for the division to be equitable. *See Brown v. Brown*, 913 S.W.2d at 168.

The trial court's purpose in dividing the marital estate was (1) to award Mr. Cheatham his two businesses and his commercial real estate holdings and (2) to award Ms. Cheatham more liquid assets that could provide her with future support. The trial court also required Mr. Cheatham to be responsible for the debts related to his business and required Ms. Cheatham to be responsible for her personal bankcard debts. Because the value of the assets Mr. Cheatham received were greater than those Ms. Cheatham received, the trial court equalized the distribution by requiring Mr. Cheatham to pay Ms. Cheatham an additional $154,295.50 either in a lump sum or over a five-year period at ten percent interest.

This distribution reflects that the trial court properly weighed the relevant factors set out in Tenn. Code Ann. § 36-4-121. The marriage is of long duration. During the early years of the marriage, Ms. Cheatham sacrificed her own formal education to provide some of the financial support that allowed Mr. Cheatham to obtain his undergraduate and graduate degrees. She contributed throughout the marriage as a homemaker and mother, and her efforts enabled Mr. Cheatham to become successful in business. Now, at the age of fifty-four, Ms. Cheatham is less employable than Mr. Cheatham, and thus her earning capacity and her ability to accumulate capital assets in the future is inferior to his. Based on her contributions to the marriage, her future employment prospects, and her physical condition, we find that the trial court properly awarded her one-half of the marital estate.

We determined earlier in Section II(A) that the trial court erred by classifying Ms. Murphy's 1991 Honda Accord and the equity from a condominium in her name as marital property. The combined value of this property is $10,000. To offset this error, we have determined that the property division should be modified by eliminating Ms. Cheatham's one-fourth interest in the Sam Johnson property and by awarding Mr. Cheatham the entire interest in this property.

### III.
#### THE AWARD OF LONG-TERM SPOUSAL SUPPORT

Mr. Cheatham takes issue with the trial court's decision to require him to pay Ms. Cheatham spousal support in the amount of $3,000 per month until her death or remarriage. He insists that the trial court ignored the legislative presumption favoring rehabilitative support as well as the proof that Ms. Cheatham is not economically disadvantaged because of the amount of marital property she has received and because of her income potential as a writer. We find that the trial court's decision is consistent with the evidence and the factors in Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1997).

There are no hard and fast rules for spousal support decisions. *See Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996). Trial courts have broad discretion in setting the amount and duration of spousal support. *See Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996); *Jones v. Jones*, 784 S.W.2d 349, 352 (Tenn. Ct. App. 1989). Their decisions should be guided by the unique facts

of each case and by a careful balancing of the factors in Tenn. Code Ann. § 36-5-101(d)(1). *See Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994); *Loyd v. Loyd*, 860 S.W.2d at 412. Appellate courts customarily decline to second-guess trial courts' spousal support decisions unless they are not supported by the evidence or are contrary to the public policy embodied in the applicable statutes. *See Brown v. Brown*, 913 S.W.2d at 169; *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986).

Even though fault is a relevant consideration when setting spousal support, *see* Tenn. Code Ann. § 36-5-101(d)(1)(K), spousal support decisions are not intended to be punitive. *See Duncan v. Duncan*, 686 S.W.2d 568, 571 (Tenn. Ct. App. 1984); *McClung v. McClung*, 29 Tenn. App. 580, 584, 198 S.W.2d 820, 822 (1946). Their purpose is to assist the economically disadvantaged spouse to become and remain self-sufficient and, when rehabilitation is not feasible, to mitigate the harsh economic realities of divorce. *See Brown v. Brown*, 913 S.W.2d at 169. The principle factors influencing spousal support decisions include the need of the recipient spouse and the ability of the obligor spouse to pay. *See Varley v. Varley*, 934 S.W.2d 659, 668 (Tenn. Ct. App. 1996); *Crain v. Crain*, 925 S.W.2d at 234; *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995).

Tenn. Code Ann. § 36-5-101(d)(1) reflects a preference for temporary, rehabilitative support, as opposed to long-term support. *See Wilson v. Moore*, 929 S.W.2d at 375. This preference does not entirely displace other forms of spousal support when the facts warrant longer term or more open-ended support. *See Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Isbell v. Isbell*, 816 S.W.2d 735, 739 (Tenn. 1991). Trial courts have the prerogative to determine the type of spousal support that best fits the circumstances, and thus trial courts may award several different kinds of support in the same case when the facts warrant it.

Notwithstanding the property she received in the division of the marital estate, Ms. Cheatham is economically disadvantaged compared to Mr. Cheatham and to her pre-divorce standard of living. She is now 54 years old and is suffering from sickle cell disease. While she has received some modest income from her writing and photography during the past seventeen years, she has been out of the workplace for

approximately twenty years. Her prospects for employment and for significant financial rehabilitation at this stage in her life are guarded at best. In light of Ms. Cheatham's education, current health, and duration of the marriage, we concur with the trial court's conclusion that she is entitled to long-term spousal support.

We have noted in other cases that long-term spousal support may be used to mitigate the harsh economic effects of divorce on an innocent spouse. *See Shackleford v. Shackleford*, 611 S.W.2d 598, 601 (Tenn. Ct. App. 1980). While divorcing parties often lack sufficient income or assets to enable both of them to maintain their pre-divorce standard of living, *see Brown v. Brown*, 913 S.W.2d at 169, an obligor spouse may occasionally be able to provide some "closing in money" to enable a former spouse to approach his or her former economic position. *See Aaron v. Aaron*, 909 S.W.2d at 411. In this case, Mr. Cheatham is financially able to provide "closing in money" to Ms. Cheatham, and Ms. Cheatham has demonstrated that she needs and deserves long-term support. Accordingly, we affirm the trial court's decision to order Mr. Cheatham to pay Ms. Cheatham $3,000 per month until her death or remarriage.

## IV.
### THE AWARD FOR MS. CHEATHAM'S LEGAL EXPENSES

Mr. Cheatham insists that the trial court erred by ordering him to pay Ms. Cheatham an additional $41,141.98 to defray her legal expenses. He argues that Ms. Cheatham has received sufficient liquid assets to enable her to pay her own legal expenses. Ms. Cheatham responds that Mr. Cheatham's conduct during discovery provided adequate grounds for the trial court's order. We have determined that the award for legal expenses should be reduced.

Awards for legal expenses in divorce litigation are considered to be additional awards of spousal support. *See Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988); *Raskind v. Raskind*, 45 Tenn. App. 583, 601, 325 S.W.2d 617, 625 (1959). They are appropriate when an economically disadvantaged spouse lacks funds to defray his or her legal expenses, *see Harwell v. Harwell*, 612 S.W.2d 182,

185 (Tenn. Ct. App. 1980), but are inappropriate when the spouse seeking the award is able to pay his or her own lawyer either from his or her own earnings or from the assets received in the divorce. *See Inman v. Inman,* 811 S.W.2d 870, 874 (Tenn. 1991); *McCarty v. McCarty*, 863 S.W.2d 716, 722 (Tenn. Ct. App. 1992).

These awards for legal expenses should be distinguished from monetary sanctions for discovery abuse permitted by Tenn. R. Civ. P. 37.01(4) and Tenn. R. Civ. P. 37.02. We have approved the imposition of monetary sanctions for discovery abuse in a divorce case following an appropriate motion and hearing. *See Mansfield v. Mansfield*, App. No. 01A01-9412-CH-00058, 1995 WL 643329, at *8 (Tenn. Ct. App. Nov. 3, 1995) (No Tenn. R. App. P. 11 application filed). However, we have also held that awards for additional legal expenses caused by obstructive behavior should not be awarded in the absence of a proper request for monetary sanctions. *See Turner v. Turner*, App. No. 01A01-9506-CV-00255, 1997 WL 136448, at *13 (Tenn. Ct. App. Mar. 27, 1997) (No Tenn. R. App. P. 11 application filed).

Ms. Cheatham did not pursue monetary sanctions against Mr. Cheatham in accordance with Tenn. R. Civ. P. 37. The trial court never held a hearing concerning the propriety of sanctions and never determined the portion of Ms. Cheatham's legal expenses that could properly be applicable to Mr. Cheatham's inappropriate conduct during discovery. Accordingly, we cannot review the trial court's decision to award Ms. Cheatham $41,141.98 in legal expenses using the standards of Tenn. R. Civ. P. 37. Rather, we must review the attorney fee award using the standards traditionally used to review awards for legal expenses in divorce cases. *See Turner v. Turner*, *supra*, 1997 WL 136448, at *13.

As a result of the division of the marital property, Ms. Cheatham has received assets valued at approximately $500,000, including a $154,000 cash payment. Accordingly, she has received sufficient liquid assets to enable her to pay her legal bills. However, she should not be forced to bear the full burden of these expenses if she will have to dispose of assets that she will need later to support herself. Based on the evidence concerning her health, education, and prospects for employment, Ms. Cheatham will most likely be required to use a large portion of the property she received in the division of the marital estate to provide housing for herself and to

support herself in the future.  She is, however, not without some ability to support herself.  Accordingly, we reduce the award for legal expenses from $41,141.98 to $15,000.

## V.

### THE MODIFICATION OF THE DECREE

As a final matter, Mr. Cheatham asserts that the trial court should not have amended the December 2, 1994 decree because Ms. Cheatham's motion was not timely filed.  We find little merit to this argument because the December 2, 1994 decree had not disposed of all the issues between the parties.

The December 2, 1994 decree allocated Ms. Cheatham's bank card debts to her but failed to specifically allocate the responsibility for the other debts.  On April 19, 1995, Ms. Cheatham filed a motion requesting the trial court to address the remaining debts and to order that Mr. Cheatham should be responsible for them.  In its June 2, 1995 order amending the divorce decree, the trial court specifically found that it had "through inadvertence . . . omitted from the Final Divorce Decree the provision concerning the parties' joint personal and business debts other than those specifically ordered to be paid by the Wife."

Under these circumstances, Ms. Cheatham's post-judgment motion was timely and proper.  Tenn. R. Civ. P. 60.01 permits the correction of clerical mistakes in judgments and orders, and Tenn. R. Civ. P. 60.02(1) permits relief from judgments because of inadvertence.  When Ms. Cheatham filed a timely motion to call attention to the trial court's oversight, the trial court acknowledged that it had overlooked allocating all the parties' debts in the original order and then entered an order correcting its own inadvertent oversight.  We find no fault with Ms. Cheatham's motion or with the trial court's response.

## VI.

We affirm the judgment as modified herein and deny Ms. Cheatham's request for attorney's fees for this appeal.  We remand the case to the trial court for whatever

-14-

further proceedings are required, and we tax the costs of this appeal in equal proportions to Eugene Calvin Cheatham and his surety and to Karyn Elizabeth Cheatham for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
BEN H. CANTRELL, JUDGE