IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 6, 2002 Session

## CATHY MOLONNIA COOKE v. RANDY PHON COOKE

**Appeal from the Chancery Court for White County**
**No. 9228     Vernon Neal, Chancellor**

---

**No. M2001-03026-COA-R3-CV - Filed June 17, 2003**

---

Wife sought divorce from Husband on the grounds of irreconcilable differences and inappropriate marital conduct. Husband sought divorce from Wife on identical grounds. After declaring the parties divorced, the trial court awarded Wife 42% of the marital estate and awarded Husband 58% of the marital estate. The trial court also awarded alimony *in solido* to Wife in the amount of $30,000. Husband appeals both the valuation of the marital estate and the award of alimony to Wife. Because we find that the evidence does not preponderate against the trial court's valuation of the marital estate, and the trial court did not abuse its discretion in awarding alimony to Wife, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and THOMAS W. GRAHAM, SP. J. joined.

J. Hilton Conger, Smithville, Tennessee, for the appellant Randy Phon Cooke.

Thomas F. Bloom, Nashville, Tennessee, for the appellee Cathy Molonnia Cooke.

### OPINION

Cathy Molonnia Cooke ("Wife") and Randy Phon Cooke ("Husband") met in October of 1991. They were married on February 15, 1992. At that time, Husband owned his own business, Upper Cumberland Veterinary Clinic, where he worked as a veterinarian. He has owned that business since 1977. Wife worked at a factory named Townsend Textron, earning approximately $8-$9 an hour. Wife had a daughter from a previous marriage who was 9 years old when the parties married. There were no children born to the marriage.

In addition to his veterinary practice, Husband also dealt in cattle before and throughout the marriage. He also owned a 34 acre farm prior to the marriage. The marital residence was constructed on this farm.

A little over a year after the parties married, Wife quit her job at Textron and began working at Husband's veterinary clinic. At the time of the divorce, she was working as a receptionist at a radio station.

The marriage was a stormy one; the parties separated a number of times, and Wife filed for divorce four times. They separated for the final time in May of 1999, and Wife filed for divorce shortly thereafter. Wife sought and was granted temporary alimony in the amount of $350 per month. At that time, she estimated her monthly expenses as $1,728.33 and her monthly income as approximately $968 per month. Husband answered the divorce complaint, and also filed his own counter-complaint for divorce.

The trial court declared the parties divorced pursuant to Tenn. Code Ann. § 36-4-129 on September 24, 2001, reserving the issue of the division of marital assets. After two hearings,[1] the trial court entered a final decree awarding 42% of the marital estate to Wife and 58% of the marital estate to Husband. The trial court also awarded alimony *in solido* in the amount of $30,000 to Wife. Husband appeals both the distribution of property and the award of alimony.

## I. Property Distribution

Husband states he does not take issue with the trial court's determination that a division of the marital estate of 42% to Wife and 58% to Husband was equitable. He objects to the inclusion in the marital estate of various items, or their value, essentially arguing that the estate subject to the 42%/58% division should be smaller than that calculated by the court.

The trial court valued the marital estate at $405,454[2] and determined that an equitable distribution was 42% to Wife and 58% to Husband. The trial court awarded Wife the following specific items:

| | |
|---|---|
| Cash taken from the safe by Wife | $84,000 |
| 1991 Chevrolet Corsica automobile | $1,500 |
| Mutual funds in the name of Kathy Cooke | $10,359 |
| IRA's in the name of Kathy Cooke | $6,459 |
| Stock in the name of Kathy Cooke | $13,831 |
| Diamond ring | $11,000 |

---

[1] There was insufficient evidence at the first hearing as to the parties' assets and their value, especially the house.

[2] This amount did not include furniture, jewelry and similar items awarded by the court in another provision of the order, whether that property was considered separate or marital. The parties have raised no issue about those items.

| | |
|---|---|
| Cash left with the Pattons | $6,000 |
| Certificate of Deposit | $9,000 |
| Balance of checking account | $300 |
| | |
| **TOTAL:** | **$142,449** |

The trial court awarded the following to Husband:

| | |
|---|---|
| All interest in real property[3] | $76,000 |
| Mutual fund accounts in joint names | $24,289 |
| IRAs in name of R.P. Cooke | $15,455 |
| Stock accounts in name of R.P. Cooke | $37,151 |
| Notes receivable from Bruce Null | $74,980 |
| Balance of business checking account | $11,386 |
| 1991 Chevrolet pickup truck | $1,700 |
| 1949 Farmall tractor | $1,500 |
| Savings bonds | $3,000 |
| Cattle and proceeds from cattle sold | $16,544 |
| | |
| **TOTAL:** | **$262,005**. |

In order to make the award conform to its formula for an equitable division, the trial court then awarded Wife a $27,742 cash payment from Husband. Thus, Wife's award was increased to $170,191, which is 42% of the total value of the items awarded.

Husband asserts that the trial court incorrectly included the appreciation of the marital residence as part of the marital estate. Alternatively, he contends that the only appreciation in the marital residence is the difference in its value upon completion and its value as of the date of the divorce. Husband also argues that the house, at least its value at completion, is his separate property because: (1) he had plans to construct the house prior to the marriage; (2) construction in fact began prior to the marriage; and (3) he paid for the house.

Prior to the marriage, Husband had started construction of a house located on a thirty-four (34) acre farm which he had owned since 1979. The parties do not dispute that the farm or the land upon which the house was built was and is Husband's separate property. The trial court apparently determined that the house itself, an improvement to Husband's land, was also Husband's separate property. Wife does not directly challenge this finding. The trial court determined that the increase in the value of the house during the marriage was marital property subject to division.

---

[3]The trial court found the increase in value during the marriage, or appreciation, of the marital residence to be marital property and established a value of $76,000 for that increase.

Husband had plans made for the house before he was engaged to Wife. The construction began after he became engaged to Wife, but prior to the marriage. It actually began in late December 1991 or early January 1992. When the parties married on February 15, 1992, construction was in the very early stages, and some materials were on site. Husband testified that prior to the marriage he spent $15,663 toward the construction of the house, and that after the marriage he spent $58,760 to complete the house. The marital residence was completed in September of 1993, and the parties moved into the house at that time. The value of the house, separate from the land, in August of 2001 was estimated at trial to be approximately $91,000.

Construction of the marital residence was paid for using funds from Husband's business checking account. However, this was the only checking account the parties used during the marriage, and their living expenses were paid from this account. Although it was not technically a joint account, Wife had signature authority. Husband testified that none of Wife's earnings, rental income, or proceeds from asset sales was ever deposited to the business checking account. Wife testified that she turned some of her earnings and other income over to Husband who did what he wanted with it. She also testified that portions of the proceeds of two assets she owned before marriage, a truck and a mobile home, were given to Husband. There was evidence that some of the proceeds of the truck were placed in a savings account in the names of Wife and her daughter and that Wife had left some of the proceeds of the trailer with friends because she needed readily available cash if she were forced to leave the marital home, which had happened in the past. Wife essentially testified that Husband controlled all the finances of the parties and she was left unaware of any financial transactions, including investments Husband made in her name.

One other aspect of the parties' finances requires mention. Husband often made transactions using cash. He testified to some purchases, such as an expensive diamond ring, that he made using cash. There were large sums of money kept around the house. In fact, $75,000 in cash disappeared from a safe in the house in the fall of 1998. Husband insists Wife took the money; Wife denies taking it.[4] By May of 1999, another $84,000 in cash had accumulated and was kept in the safe. When Wife left the marital home for the final time, she took the safe and its contents. The trial court included that $84,000 in the assets awarded to Wife.

Wife quit her job at Textron in May of 1993. Prior to that she had been working part time at the veterinary clinic, and after leaving her job at Textron she began working more or less full time at the clinic. She was not paid a regular salary for her work at the clinic. Around the time Wife changed employment, she spent a great deal of time at the house checking on the progress of construction and generally overseeing it.

---

[4]The trial court initially stated that this missing money would be allocated equally between the parties. The final order, however, does not address the money. Since its existence at the time of the divorce was not proved, the trial court properly excluded it in the division of marital property.

The trial court found that the marital residence appreciated $76,000 during the marriage and that the appreciation of $76,000 was marital property, awarding that property to Husband.

> If no other way, the Court arrived at that by taking replacement costs of the house less the depreciation, less what he spent on it before they got married. That is as close as the Court knows how to come up with the amount of appreciation. It may have well been that the other land appreciated, but that is not before the court. This appreciation was a result of her efforts. There is nothing in the record that she wasn't a housekeeper, that she didn't do the wifely duties, like cook and keep house and all of those other things. As you know, those things count just as much as working out. Those are things that have to be considered . . . .

Tennessee, being a "dual property" state, recognizes two distinct classes of property: "marital property" and "separate property." *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). The distinction is important because, in an action for divorce, only marital property is divided between the parties. Tenn. Code Ann. § 36-4-121(a)(1); *Brock v. Brock*, 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996). Separate property is not part of the marital estate subject to division. *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995).

The general rules for determining whether property is separate or marital are found in statute. Tenn. Code Ann. §§ 36-4-121(b)(1) & -121(b)(2). Of course, the courts must apply these rules to the specific facts of each case. Separate property includes all property owned by a spouse before marriage and property acquired in exchange for property acquired before marriage. Tenn. Code Ann. § 36-4-121(b)(2)(A) & (B). In addition, appreciation of property acquired before marriage is separate property, unless it is properly classified as marital property pursuant to Tenn. Code Ann. § 36-4-121(b)(1), which provides in relevant part:

> (B) Marital property includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation . . . .
> (C) As used in this subsection "substantial contribution" may include, but not be limited to, the direct or indirect contributions of a spouse as a homemaker, wage earner, parent, or family financial manager, together with such factors as the court having jurisdiction thereof may determine.

Every increase in value during the marriage does not constitute marital property. It is only where the spouse has made substantial contributions toward the preservation or appreciation of the property that the statute operates. *Harrison v. Harrison*, 912 S.W.2d 124, 127 (Tenn. 1995). Courts require some link between the spouse's marital efforts and the appreciation of the separate property before that appreciation is considered marital property. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 746 (Tenn. 2002). Where, for example, the appreciation is due solely to market factors and not to efforts of either spouse, the increase in value will not be considered marital property. *Id.*

However,

> [A]ppreciation in value of the marital residence (titled separately in the name of one spouse prior to and during the marriage) is marital property once it is shown that the other spouse substantially contributed to the home's preservation and appreciation as a result of efforts made as a homemaker or payment of the mortgage from a joint marital checking account, or other such contributions.

*Id.*

Similarly, indirect contributions by one party that allow the other party to pay for the property or asset constitute a substantial contribution to the preservation and appreciation of the property. *See Brown v. Brown*, 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994).

The trial court obviously found that Wife made substantial contributions to the preservation or appreciation of the house. Because the determination of whether property is jointly or separately held depends upon the circumstances, *Langford v. Langford*, 220 Tenn. 600, 603, 421 S.W.2d 632, 634 (1967), whether an asset is separate property or marital property is a question of fact. *Cutsinger*, 917 S.W.2d at 241; *Sherrill v. Sherrill*, 831 S.W.2d 293, 295 (Tenn. Ct. App. 1992). Thus, a trial court's classification decisions are entitled to great weight on appeal. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). These decisions will be presumed to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Langschmidt*, 81 S.W.3d at 744.

We find that the evidence does not preponderate against the trial court's finding that the appreciation of the home was marital property. The great bulk of the construction was completed after the parties married. Although costs were paid out of the business checking account, that was essentially a family purposes account also. Wife supervised the construction for at least part of the time and maintained the house. Wife contributed to the couple's financial situation by working at the clinic without a regular salary and contributed some of her other income to the marriage. Money earned by Husband after the marriage, whether placed in the business account or otherwise, was also marital property. Consequently, we affirm the trial court's classification of the increase in value of the home as marital property.

Husband alternatively argues that, even if the appreciation is considered marital property, the amount determined by the court, $76,000 was incorrect. He asserts that the appreciation should only reflect the increase in value of the home after its completion or the difference in value between the amount that the house appraised for, $91,000, and the amount he spent on the house prior to and during the marriage, or $15,663 plus $58,760. Husband thus argues that the house only appreciated $16,000, and that the trial court should have only included $16,000 in the marital estate rather than the $76,000.

Although Husband implies that the house was paid for with money he owned prior to the marriage, the record is not so specific. Husband testified that he had about $60,000 prior to the

marriage. However, he also testified to various purchases he made shortly after the marriage. Husband even testified that he had thought he had enough money to pay for the house, but that, in fact, the house ended up costing more than originally planned. The evidence is clear, through Husband's testimony and exhibits, that the house was paid for with money from the business checking account. That account would have included money earned by Husband during the fifteen months of the marriage that payments were being made toward the construction of the house. Any such income would have been marital property. There is simply no direct and specific evidence that Husband spent only pre-marital funds, or his separate property, for the construction of the house.

Tenn. Code Ann. § 36-4-121(b)(1)(B) speaks in terms of increase in value during the marriage. Thus, we can find no error in the trial court's using the value of the house as of the date of the marriage as the beginning point for its determination of the increase in value during the marriage. The evidence does not preponderate against the trial court's finding that the house appreciated $76,000 during the marriage and that the $76,000 should be treated as marital property. Consequently, we affirm that portion of the trial court's decision.

Although Husband asserts he does not disagree with the formula used by the trial court to divide the marital property, such assent is premised on his position regarding the assets to be subjected to that formula. Thus, although he does not directly challenge the fairness of the distribution, such an objection is fairly interpreted into his position.

The trial court's goal in a divorce case is to divide the marital property in an essentially equitable manner, and equity in such cases is dependent on the facts of each case. The fairness of a particular division of property between two divorcing parties is judged upon its final results. *Watters v. Watters*, 959 S.W.2d 585, 591 (Tenn. Ct. App. 1997). An equitable distribution is not necessarily an equal one. *Word v. Word*, 937 S.W.2d 931, 933 (Tenn. Ct. App. 1996). Thus, a division is not rendered inequitable simply because it is not precisely equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). Similarly, equity does not require that each party receive a share of every piece of marital property. *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998); *Brown*, 913 S.W.2d at 168.

Because dividing a marital estate is a process guided by considering all relevant factors, including those listed in Tenn. Code Ann. § 36-4-121(c), in light of the facts of a particular case, a trial court has a great deal of discretion concerning the manner in which it divides marital property. *Smith v. Smith*, 984 S.W.2d 606, 609 (Tenn. Ct. App. 1997 ); *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn. Ct. App. 1987). Appellate courts ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *Wilson*, 929 S.W.2d at 372; *Brown*, 913 S.W.2d at 168.

We affirm the trial court's distribution of the marital estate.

II.  Spousal Support

On appeal, Husband argues that the trial court erred by ordering Husband to pay $30,000 alimony *in solido* to Wife because the trial court made no findings of fact with regard to which statutory factors, if any, were considered in making the award of alimony.  Further, Husband argues, Wife is not a candidate for alimony because she is not economically disadvantaged and/or in need of rehabilitation.  Husband argues that by paying temporary alimony during the pendency of the divorce, he essentially paid rehabilitative alimony to Wife.  Wife argues that there were multiple factors proven at trial which weighed in the trial court's decision to award the alimony and that the trial court did not abuse its discretion.

Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount and duration.  *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001).  Appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to public policies reflected in applicable statutes.  *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001); *Kinard*, 986 S.W.2d at 234; *Brown*, 913 S.W.2d at 169.  Our role is to determine whether the award reflects a proper application of the relevant legal principles and that it is not clearly unreasonable.  *Bogan*, 60 S.W.3d at 733.  When the trial court has set forth its factual findings in the record, we will presume the correctness of those findings so long as the evidence does not preponderate against them.  Tenn. R. App. P. 13(d); *Bogan*, 60 S.W.3d at 733; *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).  Where there are no findings of fact which the appellate court may presume to be correct, it must conduct its own independent review of the record to determine where the preponderance of the evidence lies.

Alimony or spousal support is authorized by statute, Tenn. Code Ann. § 36-5-101(a)(1), which gives courts discretion to order "suitable support and maintenance of either spouse by the other spouse . . . according to the nature of the case and the circumstances of the parties. . . ."  There are no hard and fast rules for spousal support decisions, and such determinations require a "careful balancing" of the relevant factors.  *Anderton v. Anderton*, 988 S.W.2d 675, 682-83 (Tenn. Ct. App. 1998).  In determining whether to award support and the nature, amount and length of such support, the court is to consider all relevant factors, including those enumerated in Tenn. Code Ann. § 36-5-101(d)(1).[5]

---

[5]The factors the court must consider in setting the alimony obligation are:

(A) The relative earning capacity, obligations, needs and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(continued...)

Initial decisions regarding the entitlement to spousal support, as well as the amount and duration of spousal support, hinge on the unique facts of each case, and court must weigh and balance all relevant factors. *Robertson v. Robertson*, 76 S.W.3d 337, 338 (Tenn. 2002); *Watters*, 22 S.W.3d at 821. Among these factors, the two considered to be the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson*, 76 S.W.3d at 342; *Bogan*, 60 S.W.3d at 730; *Manis v. Manis*, 49 S.W.3d 295, 304 (Tenn. Ct. App. 2001).

Where relative economic disadvantage exists between the parties, the legislature has expressed a preference for rehabilitative alimony over long-term, open-ended alimony *in futuro*. Tenn. Code Ann. § 36-5-101(d)(1); *Robertson*, 76 S.W.3d at 339-40; *Burlew*, 40 S.W.3d at 470; *Crabtree*, 16 S.W.3d at 358. The purpose of an award of rehabilitative alimony is to encourage divorced spouses to become self-sufficient. *Robertson,* 76 S.W.3d at 339-40; *Burlew*, 40 S.W.3d at 471, *Crabtree*, 16 S.W.3d at 360. "Rehabilitative alimony may assist the disadvantaged spouse in obtaining further education or training. It may also provide temporary income to support the disadvantaged spouse during the post-divorce economic adjustment." *Robertson*, 76 S.W.3d at 340-41.

In determining whether a disadvantaged spouse can be rehabilitated with short-term support, the court is to consider "every relevant factor." *Id.* 76 S.W.3d at 340. Neither the standard of living

---

[5](...continued)

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1).

the parties enjoyed during the marriage nor the income or earning potential of the other spouse can be used as the sole or determinative factor. *Id.* 16 S.W.3d at 359.

Alimony *in solido* is an award of a definite sum that may be paid in a lump sum payment or in installments over a set period of time. *Burlew*, 40 S.W.3d at 471; *Waddey v. Waddey*, 6 S.W.3d 230, 232 (Tenn. 1999); *Isbell v. Isbell*, 816 S.W.2d 735, 738 (Tenn. 1991). Alimony *in solido* is not modifiable even upon a showing of changed circumstances, including such events as remarriage or the increased fortunes of the recipient spouse. *Self v. Self*, 861 S.W.2d 360, 362 (Tenn. 1993); *Towner v. Towner*, 858 S.W.2d 888, 890 (Tenn. 1993); *Grissom v. Grissom*, 15 S.W.3d 474, 477 (Tenn. Ct. App. 1999). "A typical purpose of such an award would be to adjust the distribution of the parties' marital property." *Burlew*, 40 S.W.3d at 471.

The legislative policy underlying our support statutes is to eliminate the dependency of one ex-spouse upon the other and to relieve the parties of "impediments incident to the dissolved marriage." *Self*, 861 S.W.2d at 361. Alimony *in solido* furthers this policy and promotes the twin goals of certainty and finality. *Id.* at 361; *Waddey*, 6 S.W.3d at 232. Where there are sufficient assets to make a lump sum award, courts are encouraged to do so.

In the present case, the trial court stated:

> Based upon need and ability to pay, the Court has during the course of the day given a lot of thought about the award of alimony. The plaintiff [Wife] is still relatively young. According to her affidavit, she has an income of $1,059.00 a month. [Husband] obviously has financial income. I agree that I don't understand why he only has a net income of $2,500 a month if he has a gross of over $10,000.00. I would hope that a veterinarian clinic here in White County could make a lot more money than that. I have given a lot of though to this. I have concluded that based upon the plaintiff's age and station in life, she needs alimony. The need is here. I think in the case of alimony, it would be more appropriate to award alimony in solido. The Court awards $30,000.00 in alimony in solido.

At trial, Wife sought rehabilitative alimony of $500 per month for five years. The trial court awarded Wife alimony *in solido* of $30,000, which is the same total amount as Wife requested, but in a lump sum that cannot be modified. The trial court's finding that "the facts of this case warrant an award of alimony *in solido* . . . ." is supported by the record.

The proof at trial showed that at the time of the divorce, Wife was employed as a receptionist at a radio station, netting $244 per week or $976 per month. Her income and expense statement claimed expenses in the amount of $1,350 per month. Leaving a monthly shortage of $374 per month. During the marriage, Wife worked at Townsend Textron, earning $8-9 per hour. Wife also worked at Husband's veterinary clinic during evenings and weekends. She did not receive a regular salary for this work. Husband claims that he has $2,500 per month in net income, although the trial court questioned Husband's income figures. Husband also testified to having substantial assets and

large amounts of cash on hand at various times. There is no evidence that Husband is unable to pay the alimony awarded, and he does not dispute his ability to pay on appeal.

There is a large disparity in the parties' level of education. Husband, as a veterinarian, has a doctorate in veterinary medicine. Wife has a high school diploma. At the time of the trial, Wife was 42 years old and Husband was 49 years old. Although Wife has a limited education, she has been able to maintain steady employment throughout the marriage and the divorce.

Based upon all the relevant factors, including the economic factors outlined above and the contributions of each party to the marriage, we conclude that the trial court acted within the broad discretion given to it. Consequently, we affirm the trial court's grant of alimony *in solido* to Wife in the amount of $30,000.

### III.  Conclusion

We decline to grant Wife's request for attorney's fees in this appeal. For the foregoing reasons, we affirm the decision of the trial court. Costs of the appeal are taxed to Randy Phon Cooke.

                                        _____

                                        PATRICIA J. COTTRELL, JUDGE